2015 FEB 18 PM 4:40

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2014 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALMUNTASSER HBAIU,<br>  aka "Alex Hbaiu,"<br>GIL CONRAD DIZON,<br>AHED HBAIU,<br>CHRISTOPHER MOUZON,<br>MICHAEL KANG, and<br>ABDALLAH NADA,<br><br>Defendants. | No. CR 13-665(D)-JAK<br><br>F O U R T H<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Defraud the United States and Deliver Misbranded Drugs in Interstate Commerce; 18 U.S.C. § 371: Conspiracy to Structure Financial Transactions; 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 21 U.S.C. § 331(a): Delivery of Misbranded Drugs in Interstate Commerce; 21 U.S.C. §§ 331(c), 352(a), (e), 333 (a)(1): Receipt of Misbranded Drugs in Interstate Commerce; 31 U.S.C. § 5324 (a)(3) and (d)(2): Structuring Financial Transactions; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1519: Alteration of Tangible Objects; 18 U.S.C. § 1503: Obstruction of Justice; 18 U.S.C. § 2: Aiding and Abetting; 18 U.S.C. § 982(a)(1): Forfeiture; 31 U.S.C. § 5317(c): Forfeiture; 18 U.S.C. § 981(a)(1)(C): Forfeiture; 18 U.S.C. § 981(a)(1)(C): Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times material to this Fourth Superseding Indictment:

A.   The Food and Drug Administration's Regulation of
     Prescription Drugs and Dietary Supplements

1.   The United States Food and Drug Administration ("FDA") was an agency of the United States responsible for protecting the health and safety of the American public by assuring, among other things, that drugs sold for administration to humans were safe and effective for the intended uses and bore labeling containing true, complete, and accurate information.  The FDA's responsibilities included regulating the labels, labeling, manufacture, and distribution of drugs shipped or received in interstate commerce.

2.   In order to legally market a drug in interstate commerce, a drug's manufacturer was required to comply with all applicable provisions of the Federal Food, Drug and Cosmetic Act ("FD&C Act"), 21 U.S.C. § 301 et seq. and its implementing regulations.

3.   The FD&C Act defined the term "drug" to include articles that (1) were intended for use in the diagnosis, cure, treatment or prevention of disease in man; or (2) were intended to affect the structure or any function of the body of man.  21 U.S.C. § 353(b)(1)(A).

4.   Some drugs regulated by the FDA were considered "prescription drugs."  "Prescription drugs" were those drugs that, because of their toxicity and other potential harmful effects, were not safe for use except under the supervision of a

1  practitioner licensed by law to administer such drugs.  21

2  U.S.C. § 353(b)(1)(A).

3      5.  "Sildenafil Citrate" ("sildenafil") was the

4  established name for active ingredient in the prescription drug

5  "Viagra™" that was indicated to treat erectile dysfunction and

6  was manufactured by Pfizer, Inc.  Pfizer was the only company

7  that had an approved New Drug Application on file with FDA for

8  sildenafil citrate and thus was the only company that could

9  legally market this drug.

10     6.  "Tadalafil" was the established name for the active

11  ingredient in the prescription drug "Cialis™" that was indicated

12  to treat erectile dysfunction and was manufactured by Eli Lilly.

13  Eli Lilly was the only manufacturer that had an approved new

14  drug application on file with FDA for tadalafil and thus was the

15  only company that could legally market this drug.

16     7.  In addition to its responsibilities with regard to

17  drugs, the FDA was also charged with protecting the health and

18  safety of the American public by assuring, among other things,

19  that "food" intended for human consumption was not adulterated

20  or misbranded.  Under the FD&C Act, a "dietary supplement" was

21  deemed to be a food.  The FD&C Act defined the term "dietary

22  supplement" to mean a product intended to supplement the diet

23  that contained one or more specified ingredients and, among

24  other things, was labeled as a dietary supplement.  A product

25  could not be a dietary supplement if it contained an ingredient

26  - such as sildenafil citrate or tadalafil - that FDA had

27  approved as a drug, or if the product made claims that

28

1  demonstrated that it was intended to be used as a drug.   21

2  U.S.C. § 321(ff).

3      8.   Because they were considered to be foods, and not

4  drugs, dietary supplements were not subject to any of FDA's

5  extensive pre-market regulatory authority.   21 U.S.C. § 355.

6  Similarly, manufacturers and distributors of dietary supplements

7  were subject to less rigorous facility inspections than were

8  drug manufacturers.

9      9.   The FD&C Act prohibited the introduction or delivery

10 for introduction into interstate commerce, or the causing

11 thereof, of any drug or food that was misbranded or adulterated.

12 21 U.S.C. § 331.   It was also a prohibited act to receive in

13 interstate commerce a misbranded or adulterated drug or food and

14 to deliver or proffer delivery of it for pay or otherwise.   21

15 U.S.C. § 331(c).

16     10.   The FD&C Act defined many ways a drug was deemed

17 misbranded, including:   (1) if its labeling was false or

18 misleading in any particular, 21 U.S.C. § 352(a); (2) if its

19 label did not bear the established name and quantity of each

20 active ingredient, 21 U.S.C. § 352(e)(1)(A); or (3) if it was a

21 prescription drug and was not dispensed pursuant to a licensed

22 medical practitioner, 21 U.S.C. § 353(b)(1).

23     11.   Under the FD&C Act, a food was deemed to be misbranded

24 if its labeling was false or misleading in any particular way.

25 21 U.S.C. § 343(a).

26 B.   The Products

27     12.   "Libigrow", "Libigrow XXXtreme" "Mojo Nights", "Blue

28 Diamond", and other brands marketed and distributed by the

4

1  defendants herein were gelcaps and pills sold over the counter

2  and on the internet that were labeled and marketed as all

3  natural dietary supplements and "performance enhancers."

4      13.   Internet web sites that offered for sale and/or

5  provided information about the gelcaps and pills described in

6  paragraph 12 of this Fourth Superseding Indictment included

7  Libigrow.com, Mojonights.com, Trymojonights.com,

8  Bluediamondpill.com., LibigrowXXXtreme.com and

9  pplusmarketing.zendesk.com.

10      14.   The registrants for the web sites listed in paragraph

11  13 of this Fourth Superseding Indictment and the companies

12  associated with the web sites included Performance Plus

13  Marketing, Inc., H&K Nutraceuticals, True2Beauty, Inc., Get It

14  Up, Inc., Libigrow, Inc., Xhale Distributors, and PHD Marketing.

15  C.   The Defendants

16      15.   Defendant ALMUNTASSER HBAIU, also known as "Alex

17  Hbaiu" ("ALMUNTASSER HBAIU"), was an officer or registered agent

18  of Performance Plus Marketing, Inc., Libigrow, Inc., Get It Up,

19  Inc. and True2Beauty, Inc.  The other entities listed in

20  paragraph 14 of this Fourth Superseding Indictment were

21  domiciled at the same location as Performance Plus Marketing and

22  rent for those facilities was paid from an account on which

23  defendant ALMUNTASSER HBAIU had signatory authority.

24      16.   Defendant GIL CONRAD DIZON was employed by Libigrow

25  and Xhale Glass, Inc. and was secretary of True2Beauty, Inc.

26      17.   Defendant ALMUNTASSER HBAIU and his brother, defendant

27  AHED HBAIU, were co-presidents of Caliber Investments, Inc., a

28  Pennsylvania corporation that at one time owned the 1 Stop

1   Sunoco Gas Station and Convenience Store in York County,
2   Pennsylvania.  Defendant AHED HBAIU was responsible for the
3   renovation, construction, and operation of the 1 Stop Sunoco Gas
4   Station and Convenience Store in York County, Pennsylvania.
5   Defendant AHED HBAIU was the president and treasurer of Eclipse
6   Builders, Inc.  The web site for Eclipse Builders, Inc.
7   advertised that it was founded in 2002 by Edward Shami (an alias
8   for defendant AHED HBAIU), when, in fact, the business entity
9   was not created until 2007.

10        18.  Defendant CHRISTOPHER MOUZON was married to the sister
11  of defendants AHED HBAIU and ALMUNTASSER HBAIU.  Bushra Melton
12  and Alaa Jacquez, who are referenced in this Fourth Superseding
13  Indictment, are sisters of defendants AHED HBAIU and ALMUNTASSER
14  HBAIU.

15        19.  Defendant ABDALLAH NADA was the president of Mecca
16  Enterprises, dba JSA International, 1541 Powerline Road, Pompano
17  Beach, Florida, a distributor of the Mojo Nights family of
18  products, and Nada Marketing dba Mojo Health, a company
19  domiciled in the same location as Mecca Enterprises, and used
20  for the financial and distribution aspects of Mojo Nights.
21  Defendant ALMUNTASSER HBAIU was listed briefly as the registered
22  agent and as a director of Mecca Enterprises, Inc.

23        20.  Defendant MICHAEL KANG was the registered agent of
24  Mista Plus Bioscience, Inc., 3700 Wilshire Blvd., Suite 625, Los
25  Angeles, California 90010.  Defendant MICHAEL KANG was part
26  owner of Korsy Enterprises, Inc. and was the registered agent
27  for Nutriplus Services, Inc., the predecessor to Korsy
28  Enterprises, Inc., businesses which were also domiciled at 3700

Wilshire Blvd., Suite 625, Los Angeles, California 90010.  Mista
Plus Bio Science, Inc., Korsy Enterprises, Inc. and Nutriplus
Services, Inc. supplied companies owned by defendant ALMUNTASSER
HBAIU with dietary supplements and dietary supplement
ingredients.

21.  Kretek International, Moorpark, CA, was the exclusive
distributor of the Libigrow family of products.  These products
included Libigrow, Libigrow XXXtreme, Blue Diamond, Mega
Kamasutra, Libigirl, Libigrow shots, and Pink Diamond
supplements.

COUNT ONE

[18 U.S.C. § 371]

22.   Paragraphs 1 through 21 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

A.   THE OBJECTS OF THE CONSPIRACY

23.   Beginning in or about October 2006, and continuing through December 2012, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, including the Commonwealth of Pennsylvania, and the states of Florida and Georgia, defendants ALMUNTASSER HBAIU, also known as "Alex Hbaiu," GIL CONRAD DIZON, AHED HBAIU, MICHAEL KANG, and ABDALLAH NADA, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

     a.   To defraud the United States and its agencies by impeding, impairing, and defeating the lawful functions of the FDA to protect the health and safety of the public by ensuring that drugs (including prescription drugs) were safe and effective for their intended uses, and that foods were safe, and that the labeling of each bore true and adequate information for a consumer to safely use the product;

     b.   To introduce and deliver for introduction into interstate commerce a misbranded drug or food with the intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(a), 352(a),(e), 353(b)(1), and 333(a)(2); and

     c.   To receive in interstate commerce a misbranded drug or food and to deliver and proffer for delivery thereof for

8

1    pay and otherwise with the intent to defraud and mislead, in

2    violation Title 21, United States Code, Sections 331(c),

3    352(a)(e), 353(b)(1), and 333(a)(2).

4    B.    THE MANNER AND MEANS OF THE CONSPIRACY

5        24.   The objects of the conspiracy were carried out, and to

6    be carried out, in substance as follows:

7            a.   Defendants ALMUNTASSER HBAIU, GIL CONRAD DIZON,

8    AHED HBAIU, MICHAEL KANG, and ABDALLAH NADA would market and

9    distribute products, including "Libigrow", "Libigrow XXXtreme",

10   "Mojo Nights" and "Blue Diamond," as all-natural male

11   enhancement products and dietary supplements when, in fact, the

12   products contained sildenafil or tadalafil, the active

13   ingredients in the prescription drugs Viagra™ and Cialis™ or

14   analogs of these active ingredients.

15   C.    OVERT ACTS

16       25.   In furtherance of this conspiracy and to accomplish

17   the objects of the conspiracy, defendants ALMUNTASSER HBAIU, GIL

18   CONRAD DIZON, AHED HBAIU, MICHAEL KANG, and ABDALLAH NADA,

19   together with others known and unknown to the Grand Jury,

20   committed and willfully caused others to commit the following

21   overt acts, among others, in the Central District of California

22   and elsewhere:

23       Overt Act No. 1:   On or about November 10, 2005, defendant

24   ALMUNTASSER HBAIU purchased the internet domain name

25   Libigrow.com.

26       Overt Act No. 2:   On or about the following dates,

27   defendant ALMUNTASSER HBAIU purchased the following internet

28   domain names from GoDaddy: Bluediamondpill.com, December 3,

9

2009; Mojonights.com, February 1, 2010; Korsyenterprises.com, March 30, 2010; Korsyproducts.com, March 30, 2010; LibigrowXXXtreme.com, June 9, 2011; and Trymojonights.com, November 21, 2011.

Overt Act No. 3:  Starting in or about approximately November 2008, and continuing through in or about September 2012, businesses associated with defendant MICHAEL KANG supplied "male enhancement formula" pills, gelcaps and ingredients to businesses controlled by defendant ALMUNTASSER HBAIU.

Overt Act No. 4:  Starting in or about December 2008, and continuing through in or about December 2012, defendant ABDALLAH NADA, through businesses he controlled, purchased Libigrow and Mojo Nights supplements from businesses controlled by defendant ALMUNTASSER HBAIU and through defendant GIL DIZON, who acted as a salesperson who distributed these products.

Overt Act No. 5:  Starting in or about December 2010, and continuing through in or about December 2012, defendant ALMUNTASSER HBAIU'S businesses True2Beauty, Inc. and Performance Plus Marketing Inc. distributed the "Libigrow family" line of products through Kretek International.

Overt Act No. 6:  Beginning in or about June 2011, and continuing through in or about September 2012, defendant ABDALLAH NADA, through a business he was associated with, purchased Libigrow and Libigrow XXXtreme from Kretek International.

Overt Act No. 7:  On or about October 3, 2011, defendants ALMUNTASSER HBAIU and DIZON obtained exhibitor passes for the National Association of Convenience Stores ("NACS") show in

10

1   Chicago, Illinois, where they promoted Libigrow and Mojo Nights
2   products, and where an FDA agent obtained samples of Mojo Nights
3   and Libigrow, which were later tested and found to contain an
4   analog of sildenafil.

5      Overt Act No. 8:  On or about March 7, 2012, defendants
6   ALMUNTASSER HBAIU and AHED HBAIU, through Caliber Investments,
7   owned the 1 Stop Sunoco Gas Station and Convenience Store at a
8   time when one of their employees sold Libigrow to an FDA agent,
9   which was subsequently tested and found to contain an analog of
10  sildenafil.

11     Overt Act No. 9:  On or about July 17, 2012, defendants
12  ALMUNTASSER HBAIU and AHED HBAIU, through Caliber Investments,
13  owned the 1 Stop Sunoco Gas Station and Convenience Store at a
14  time when one of their employees sold Libigrow to an FDA agent,
15  which was subsequently tested and found to contain an analog of
16  sildenafil.

17     Overt Act No. 10:  On or about July 26, 2012, defendants
18  ALMUNTASSER HBAIU and AHED HBAIU, through Caliber Investments,
19  owned the 1 Stop Sunoco Gas Station and Convenience Store at a
20  time when one of their employees sold Blue Diamond to an FDA
21  agent, which was subsequently tested and found to contain
22  tadalafil, sildenafil, and analogs of sildenafil.

23     Overt Act No. 11:  In or around July 2012, defendant
24  ALMUNTASSER HBAIU served as the contact person for Performance
25  Plus Marketing, Inc. at a time when the websites Libigrow.com,
26  Mojonights.com, trymojonights.com, and bluediamondpill.com were
27  all registered to that business; and at that time an FDA agent
28  purchased Mojo Nights, Blue Diamond, and Libigrow from these

1  websites, and all purchases were tested and found to contain

2  sildenafil, tadalafil, and analogs of sildenafil.

COUNT TWO

[18 U.S.C. § 371]

26.   Paragraphs 1 through 25 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

A.   THE OBJECTS OF THE CONSPIRACY

27.   Beginning in or about May 2009, and continuing through in or about March 2011, in Los Angeles County, within the Central District of California and elsewhere, defendants ALMUNTASSER HBAIU, also known as "Alex Hbaiu," GIL CONRAD DIZON, AHED HBAIU, and CHRISTOPHER MOUZON (collectively, the "defendants"), and others known and unknown to the Grand Jury knowingly combined, conspired, and agreed with each other and with others both known and unknown to the Grand Jury to commit the following offense against the United States:

a.   To evade the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations promulgated thereunder, by structuring, and attempting to structure, and assisting in structuring, transactions with a domestic financial institution, in violation of Title 31, United States Code, Section 5324(a)(3).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

28.   The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a.   Defendants ALMUNTASSER HBAIU, GIL CONRAD DIZON, AHED HBAIU, and CHRISTOPHER MOUZON would structure financial transactions or allow the use of their bank accounts to structure financial transactions using the proceeds of the sales

13

1  of the products referenced in Count One of this Fourth

2  Superseding Indictment, as well as other proceeds, to avoid cash

3  transaction reporting requirements.  These structured deposits

4  would consist, in part, of deposits to bank accounts belonging

5  to or controlled by some or all of the defendants, their family

6  members, or their associates, and these funds would then be

7  transferred to other bank accounts controlled by the defendants,

8  their family members, or their associates and/or used for the

9  benefit of defendant ALMUNTASSER HBAIU.

10  C.    OVERT ACTS

11      29.  In furtherance of the conspiracy, and to accomplish

12  its object, defendants ALMUNTASSER HBAIU, GIL CONRAD DIZON, AHED

13  HBAIU, and CHRISTOPHER MOUZON, together with others known and

14  unknown to the Grand Jury, committed and willfully caused others

15  to commit the following overt acts, among others, within the

16  Central District of California and elsewhere:

17      Overt Act No. 1:  On or about August 26, 2009, an

18  unindicted co-conspirator received a cash deposit of $9,800 into

19  the unindicted co-conspirator's Bank of America bank account at

20  the Northlake Branch in Tucker, Georgia, and approximately 15

21  minutes later, an unindicted co-conspirator received a second

22  cash deposit of $9,800 into an unindicted co-conspirator's Bank

23  of America bank account at the Tucker Branch, in Tucker,

24  Georgia.  Approximately 30 minutes later, defendant CHRISTOPHER

25  MOUZON received a $9,800 cash deposit into his Bank of America

26  account at Mountain Industrial Branch in Stone Mountain,

27  Georgia.  The driver's license number of defendant ALMUNTASSER

28  HBAIU appears on the deposit slip for this transaction.

1    <u>Overt Act No. 2</u>:  On or about October 15, 2010, defendant
2    ALMUNTASSER HBAIU made a $9,900 cash deposit into the Bank of
3    America bank account of defendant AHED HBAIU.  On October 18,
4    2010, a $9,900 cash deposit was made into Caliber Investments'
5    Bank of America bank account at the 6th Central Branch in Los
6    Angeles, California.  Approximately three minutes later
7    defendant AHED HBAIU received a $9,900 cash deposit into a Bank
8    of America bank account he controlled at the same bank branch in
9    Los Angeles, California, via a different teller at the same bank
10   branch.

11   <u>Overt Act No. 3</u>:  On or about November 1, 2010, defendant
12   ALMUNTASSER HBAIU made a cash deposit of $9,000 into a Caliber
13   Investments' Bank of America bank account at the Bank of America
14   6th Central Branch in Los Angeles, California.  Approximately
15   eight minutes later, defendant ALMUNTASSER HBAIU made another
16   deposit consisting of $7,000 cash and $2,000 in personal money
17   orders at the same branch bank and into the Bank of America
18   account of defendant AHED HBAIU.

19   <u>Overt Act No. 4</u>:  On or about October 8, 2010, defendant
20   GIL CONRAD DIZON conducted the following cash transactions at
21   various Bank of America branches in the Atlanta, Georgia, area:
22   11:32 am, $9,000 deposit in Caliber Investments' account at the
23   Midtown Center Branch; 11:56 am, $9,900 deposit into defendant
24   AHED HBAIU'S account at Bank of America Plaza; 1:18 pm, $9,900
25   deposit into Alaa Hbaiu's (aka Alaa Jacquez) account at Ansley
26   Mall; 1:26 pm, $9,900 deposit into Bushra Melton's account at
27   Buckhead Crossing; 2:03 pm, $9,900 deposit into GIL DIZON'S
28   account at Monarch Plaza; and 4:01 pm, $9,100 purchase of a Bank

1  of America cashier's check payable to Caliber Investments at
2  Midtown Center.   This same check was deposited minutes later
3  into Caliber Investments' account at Midtown Center.

4      Overt Act No. 5:   Between on or about May 2009, and on or
5  about September 2009, a substantial portion of the cash deposits
6  structured were used to satisfy a bank mortgage held on the
7  residence of Bushra and James Melton located at 1806 Meadow
8  Ridge Drive, Hummelstown, Pennsylvania (the "Hummelstown
9  Property"); and approximately one year later, on or about
10 September 15, 2010, defendant ALMUNTASSER HBAIU took title to
11 the Hummelstown Property by way of a Quit Claim Deed.

12     Overt Act No. 6:   Between in or about August 2009, and in
13 or about March 2011, defendants ALMUNTASSER HBAIU and AHED HBAIU
14 used a substantial portion of the structured cash deposits to
15 fund the business operations of Caliber Investments, 1 Stop
16 Sunoco Gas Station, and Eclipse Builders, Inc., all located in
17 York County, Pennsylvania.

18
19
20
21
22
23
24
25
26
27
28

COUNT THREE

[18 U.S.C. § 1956(h)]

30.   Paragraphs 1 through 29 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

A.   THE OBJECT OF THE CONSPIRACY

31.   Beginning in or about December 2008, and continuing through in or about December 2012, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, including the state of Florida, defendants ALMUNTASSER HBAIU, also known as "Alex Hbaiu," MICHAEL KANG, ABDALLAH NADA, and others known and unknown to the Grand Jury, knowing that the property involved in a financial transaction represented the proceeds of mail fraud which mail fraud caused the unlawful introduction, delivery, and receipt of misbranded drugs in interstate commerce, did intentionally and knowingly unlawfully combine, conspire, and confederate and agree with each other and with others known and unknown to the Grand Jury, to conduct or attempt to conduct a financial transaction involving the proceeds of the unlawful activity with the intent to promote the carrying on of the unlawful activity, a violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

32.   The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a.   Defendant ABDALLAH NADA and others known and unknown to the Grand Jury would pay money towards the purchase of products containing the prescription drugs that they obtained

17

1  by way of interstate commercial carrier from defendant

2  ALMUNTASSER HBAIU'S businesses.

3         b.   Defendant ALMUNTASSER HBAIU would use the

4  proceeds generated from these purchases to purchase additional

5  products containing the prescription drugs from defendant

6  MICHAEL KANG.

7  C.   OVERT ACTS

8         33.   In furtherance of the conspiracy, and to accomplish

9  its object, defendants ALMUNTASSER HBAIU, MICHAEL KANG, and

10 ABDALLAH NADA, together with others known and unknown to the

11 Grand Jury, committed and willfully caused others to commit the

12 following overt acts, among others within the Central District

13 of California and elsewhere:

14     Overt Act No. 1:   Between in or around December 2010 and

15 January 2012, defendant ALMUNTASSER HBAIU, through his business

16 True 2 Beauty, Inc. received in excess of $2.5 million from

17 Kretek International.

18     Overt Act No. 2:   Between in or around February 2012 and

19 November 2012, defendant ALMUNTASSER HBAIU, through his business

20 Performance Plus Marketing, received in excess of $2.4 million

21 from Kretek International.

22     Overt Act No. 3:   Between in or around February 2012

23 through December 2012, defendant ALMUNTASSER HBAIU, through his

24 business Performance Plus Marketing, received in excess of $1.1

25 million from an accounts receivable factoring company.

26 Defendant ABDALLAH NADA paid for product obtained from defendant

27 ALMUNTASSER HBAIU'S business through this accounts receivable

28 factoring company.

1    <u>Overt Act No. 4</u>:  Between in or around June 2011 and

2  January 2012, defendant ALMUNTASSER HBAIU, through his business

3  True 2 Beauty, Inc., paid defendant MICHAEL KANG, through his

4  business Korsy Enterprises, Inc., in excess of $800,000.

5    <u>Overt Act No. 5</u>:  Between in and around February 2012

6  through October 2012, defendant ALMUNTASSER HBAIU, through his

7  business Performance Plus Marketing, paid defendant MICHAEL

8  KANG, through his businesses Korsy Enterprises, Inc. and

9  Nutriplus Services, Inc., in excess of $2.2 million.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTS FOUR THROUGH THIRTEEN

[21 U.S.C. § 331(a); 18 U.S.C. § 2]

34. Paragraphs 1 through 33 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

35. Beginning in or about October 2006, and continuing through in or about December 2012, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, including the Commonwealth of Pennsylvania, and the states of Florida and Georgia, defendants ALMUNTASSER HBAIU, also known as "Alex Hbaiu," GIL CONRAD DIZON, AHED HBAIU, MICHAEL KANG, and ABDALLAH NADA and others known and unknown to the Grand Jury, aiding and abetting each other, with the intent to defraud or mislead, unlawfully introduced and delivered for introduction into interstate commerce, and caused the introduction and delivery for introduction into interstate commerce, as set forth in Counts Four through Thirteen, drugs that were misbranded in the following ways:

a.    within the meaning of 21 U.S.C. § 353(b)(1), in that the drugs were prescription drugs dispensed without a prescription of a practitioner licensed by law to administer such drugs;

b.    within the meaning of 21 U.S.C. § 352(a), in that its labeling was false and misleading in any particular; and

c.    within the meaning of 21 U.S.C. § 352(e), in that the label on the drug did not list the ingredient.

COUNT FOUR:  On or about October 3, 2011, an FDA agent obtained a sample of Mojo Nights and Libigrow at the National

20

1 | Association of Convenience Stores ("NACS") show in Chicago, IL.
2 | A representative of Kretek International was in attendance at
3 | the NACS.  The samples were tested and found to contain an
4 | analog of sildenafil.  Defendants ALMUNTASSER HBAIU and GIL
5 | DIZON obtained exhibitor passes for that show.

6 | COUNT FIVE:  On or about March 7, 2012, an FDA agent
7 | purchased Libigrow from the 1 Stop Sunoco Gas Station and
8 | Convenience Store in York County, Pennsylvania, the operation of
9 | which was the responsibility of defendant AHED HBAIU.  The
10 | sample was tested and found to contain an analog of sildenafil.

11 | COUNT SIX:  On or about March 20, 2012, an FDA agent placed
12 | an order via the internet for Libigrow on www.libigrow.com.  The
13 | shipment of Libigrow generated by this order was found to
14 | contain sildenafil, tadalafil, and analogs of sildenafil.

15 | COUNT SEVEN:  On or about July 17, 2012, an FDA agent
16 | purchased  Libigrow and Mojo Nights from the 1 Stop Sunoco Gas
17 | Station and Convenience Store in York County, Pennsylvania.  The
18 | samples were tested and found to contain an analog of
19 | sildenafil.

20 | COUNT EIGHT:  On or about July 26, 2012, an FDA agent
21 | purchased Blue Diamond from the 1 Stop Sunoco Gas Station and
22 | Convenience Store in York County, Pennsylvania.  The same sample
23 | was tested and found to contain tadalafil, sildenafil, and
24 | analogs of sildenafil.

25 | COUNT NINE:  On or about July 26, 2012, an FDA agent placed
26 | an order via the internet for Libigrow on www.libigrow.com.  The
27 | pills were shipped from Total Fulfillment Shipping, 5560 E. 61st
28 | Street, Commerce, California, to an undercover post office box

1  in Lebanon, Pennsylvania.  The pills were tested and found to

2  contain sildenafil, tadalafil, and analogs of sildenafil.

3      COUNT TEN:  On or about July 26, 2012, an FDA agent placed

4  an order via the internet for Libigrow on www.libigrow.com.  The

5  pills were shipped from Total Fulfillment Shipping, 5560 E. 61st

6  Street, Commerce, California, to an undercover post office box

7  in Lebanon, Pennsylvania.  The pills were tested and found to

8  contain sildenafil, tadalafil, and an analog of sildenafil.

9      COUNT ELEVEN:  On or about July 26, 2012, an FDA agent

10  placed an order via the internet for Mojo Nights on

11  www.trymojonights.com.  The pills were shipped from Shipping

12  Department True2Beauty, Inc., 5560 E. 61st Street, Commerce,

13  California, to an undercover post office box in Lebanon,

14  Pennsylvania.  The pills were tested and found to contain

15  sildenafil, tadalafil, and an analog of sildenafil.

16      COUNT TWELVE:  On or about July 26, 2012, an FDA agent

17  placed an order via the internet for Mojo Nights on

18  www.mojonights.com.  The pills were shipped from Total

19  Fulfillment Shipping, 5560 E. 61st Street, Commerce, California,

20  to an undercover post office box in Lebanon, Pennsylvania.  The

21  pills were tested and found to contain sildenafil, tadalafil,

22  and an analog of sildenafil.

23      COUNT THIRTEEN:  On or about July 26, 2012, an FDA agent

24  placed an order via the internet for Blue Diamond on

25  www.bluediamondpill.com.  The pills were shipped from Shipment

26  Department, True2Beauty, Inc., 5560 E. 61st Street, Commerce,

27  California, to an undercover post office box in Lebanon,

28

1  Pennsylvania.   The pills were tested and found to contain found

2  to contain sildenafil, tadalafil, and an analog of sildenafil.

COUNT FOURTEEN

[21 U.S.C. §§ 331(c), 352(a), (e), 333(a)(1); 18 U.S.C. § 2]

36.   Paragraphs 1 through 35 of this Fourth Superseding
Indictment are re-alleged and incorporated by reference as
though fully set forth herein.

37.   Beginning in or about October 2006, and continuing
through in or about December 2012, in Los Angeles County and
Orange County, within the Central District of California, and
elsewhere, including the Commonwealth of Pennsylvania, and the
States of Florida and Georgia, the defendants ALMUNTASSER HBAIU,
also known as "Alex Hbaiu," GIL CONRAD DIZON, AHED HBAIU,
MICHAEL KANG, and ABDALLAH NADA, and others known and unknown to
the Grand Jury, aiding and abetting each other, received
misbranded drugs in interstate commerce, specifically sildenafil
and tadalafil and analogs of sildenafil and tadalafil, and
delivered them and proffered for delivery thereof for pay and
otherwise.

1          COUNT FIFTEEN

2          [31 U.S.C. §§ 5324(a)(3), (d)(2); 18 U.S.C. § 2]

3          38.   Paragraphs 1 through 37 of this Fourth Superseding

4    Indictment are re-alleged and incorporated by reference as

5    though fully set forth herein.

6          39.   Beginning in or about May 2009, and continuing through

7    in or about March 2011, in Los Angeles County, within the

8    Central District of California and elsewhere, including the

9    Commonwealth of Pennsylvania, and the state of Georgia, the

10   defendants ALMUNTASSER HBAIU, also known as "Alex Hbaiu," GIL

11   CONRAD DIZON, AHED HBAIU, and CHRISTOPHER MOUZON, and others

12   known and unknown to the Grand Jury, aiding and abetting each

13   other, did knowingly and for the purpose of evading the

14   reporting requirements of Title 31, United States Code, Section

15   5313(a), and the regulations promulgated thereunder, structure

16   and attempt to structure transactions with a domestic financial

17   institution, and did so as part of a pattern of illegal activity

18   involving more than $100,000 in a 12-month period.

19

20

21

22

23

24

25

26

27

28

COUNTS SIXTEEN AND SEVENTEEN

[18 U.S.C. §§ 1343 and 2]

40.   Paragraphs 1 through 39 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

41.   Beginning in or about December 2008, and continuing through in or about December 2012, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, including the Commonwealth of Pennsylvania, and the states of Florida and Georgia, defendants ALMUNTASSER HBAIU, also known as "Alex Hbaiu," GIL CONRAD DIZON, MICHAEL KANG, ABDALLAH NADA, and others known and unknown to the Grand Jury, aiding and abetting each other, devised a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises as described in previous counts of this Fourth Superseding Indictment and, on or about the dates set forth below, did cause to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, any writing, sign, signal, picture or sound for the purpose of executing such scheme or artifice, as described below:

COUNT SIXTEEN:   On March 20, 2012, an FDA agent placed an order via the internet for Libigrow.   The shipment of Libigrow generated by this order was found to contain sildenafil, tadalafil, and analogs of sildenafil.

COUNT SEVENTEEN:   On July 26, 2012, an FDA agent placed an order via the internet for Libigrow.   The shipment of Libigrow

1   generated by this order was found to contain sildenafil,

2   tadalafil, and analogs of sildenafil.

1              COUNTS EIGHTEEN THROUGH TWENTY-TWO

2                  [18 U.S.C. §§ 1341 and 2]

3      42.   Paragraphs 1 through 41 of this Fourth Superseding

4    Indictment are re-alleged and incorporated by reference as

5    though fully set forth herein.

6      43.   Beginning in or about December 2008, and continuing

7    through in or about December 2012, in Los Angeles County and

8    Orange County, within the Central District of California and

9    elsewhere, including the Commonwealth of Pennsylvania and the

10   states of Florida and Georgia, defendants ALMUNTASSER HBAIU,

11   also known as "Alex Hbaiu," GIL CONRAD DIZON, MICHAEL KANG, and

12   ABDALLAH NADA, and others known and unknown to the Grand Jury,

13   aiding and abetting each other, devised a scheme and artifice to

14   defraud, and for obtaining money and property by means of false

15   and fraudulent pretenses, representations and promises as

16   described in previous counts of this Fourth Superseding

17   Indictment and, in furtherance of and for purpose of executing

18   or attempting to execute this scheme and artifice to defraud, on

19   or about the dates set forth below, did knowingly cause any

20   matter or thing to be sent, delivered, and moved by the United

21   States Postal Service and private and commercial interstate

22   carriers, to and from the address set forth below, according to

23   the direction thereon:

24   COUNT EIGHTEEN:   On or about July 11, 2012, a package

25   containing purported "legitimate" samples of Mojo Nights and a

26   letter from counsel for defendant ALMUNTASSER HBAIU was sent

27   from a law firm in Washington D.C. to the FDA in Silver Spring,

28   MD.   The pills, which originated at defendant ALMUNTASSER

                              28

1    HBAIU's business in the Central District of California, were

2    tested and were found not to contain the prescription drugs.

3         COUNT NINETEEN:  On or about July 26, 2012, an FDA agent

4    purchased Blue Diamond through the web site bluediamondpill.com.

5    The pills were shipped from Shipment Department, True2Beauty,

6    Inc., 5560 East 61st Street, Commerce, California, to an

7    undercover post office box in Lebanon, PA.  The pills were

8    tested and found to contain sildenafil, tadalafil, and an analog

9    of sildenafil.

10        COUNT TWENTY:  On or about July 26, 2012, an FDA agent

11   purchased Libigrow through the web site libigrow.com.  The pills

12   were shipped on or about July 27, 2012, from Total Fulfillment

13   Shipping, 5560 East 61st Street, Commerce, California, to an

14   undercover post office box in Lebanon, Pennsylvania.  The pills

15   were tested and found to contain sildenafil, tadalafil, and

16   analogs of these drugs.

17        COUNT TWENTY-ONE:  On or about July 26, 2012, an FDA agent

18   purchased Mojo Nights through the web site trymojonights.com.

19   The pills were shipped from Shipment Department True2Beauty,

20   Inc. 5560 East 61st Street, Commerce, California, to an

21   undercover post office box in Lebanon, Pennsylvania.  The pills

22   were tested and found to contain sildenafil, tadalafil, and an

23   analog of sildenafil.

24        COUNT TWENTY-TWO:  On or about September 10, 2012, 840

25   boxes of Libigrow XXXtreme 12 Count Cartons (10,080 pills) were

26   shipped via interstate commercial carrier FedEx Freight from

27   Kretek International located in Moorpark, California to JSA

28   International in Pompano Beach, Florida.  Samples of these

1  products were collected by FDA on October 11, 2012.  The samples

2  were tested and found to contain sildenafil, tadalafil, and an

3  analog of sildenafil.

1                    COUNT TWENTY-THREE

2                  [18 U.S.C. §§ 1519 and 2]

3        44.   Paragraphs 1 through 43 of this Fourth Superseding

4   Indictment are re-alleged and incorporated by reference as

5   though fully set forth herein.

6        45.   On or about July 11, 2012, in Los Angeles County and

7   Orange County, within the Central District of California, and

8   elsewhere, including Washington, D.C., defendant ALMUNTASSER

9   HBAIU, also known as "Alex Hbaiu" ("HBAIU"), aided and abetted

10  by individuals known and unknown to the Grand Jury, knowingly

11  altered, destroyed, concealed, covered up, falsified, and made a

12  false entry in any record, document, or tangible object with the

13  intent to impede, obstruct, and influence the proper

14  administration of any matter within the jurisdiction of any

15  department or agency of the United States, or in relation to or

16  contemplation of any such matter or case, in that defendant

17  HBAIU caused false "samples" of Mojo Nights that did not contain

18  prescription drugs to be submitted to the FDA in an attempt to

19  influence FDA's investigation of prescription drugs in dietary

20  supplements.

21

22

23

24

25

26

27

28

                              31

COUNT TWENTY-FOUR

[18 U.S.C. §§ 1519 and 2]

46.   Paragraphs 1 through 45 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

47.   On or about December 6, 2012, in Los Angeles County, California, within the Central District of California and elsewhere, defendant MICHAEL KANG ("KANG"), aided and abetted by individuals known and unknown to the Grand Jury, knowingly altered, destroyed, concealed, covered up, falsified, and made a false entry in any record, document, or tangible object with the intent to impede, obstruct, and influence the proper administration of any matter within the jurisdiction of any department or agency of the United States, or in relation to or contemplation of any such matter or case, in that defendant KANG provided false "samples" of the herbal dietary supplement blend powder to federal criminal investigators investigating reports of prescription drugs in dietary supplements.

COUNT TWENTY-FIVE

[18 U.S.C. §§ 1503 and 2]

48.   Paragraphs 1 through 47 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

49.   On or about May 30, 2014, in Los Angeles County, California, in the Central District of California, and elsewhere,  defendant ALMUNTASSER HBAIU, also known as "Alex Hbaiu" ("HBAIU"), aided and abetted by individuals known and unknown to the Grand Jury, corruptly influenced, corruptly obstructed and impeded, and endeavored to corruptly influence, obstruct, and impede the due administration of justice in United States v. Almuntasser Hbaiu, CR 13-665-JAK, a pending criminal case filed in the United States District Court for the Central District of California, by making false representations in a sworn affidavit filed in defendant HBAIU's Motion to Modify Bail Conditions in an effort to influence the judge's decision.

COUNT TWENTY-SIX

[18 U.S.C. § 1956(h)]

50.   Paragraphs 1 through 49 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

A.   THE OBJECT OF THE CONSPIRACY

51.   Beginning in at least April 2012, and continuing through in or around July 2012, in Los Angeles County and Orange County, within the Central District of California and elsewhere, defendants ALMUNTASSER HBAIU, also known as "Alex Hbaiu," and MICHAEL KANG conspired to engage in monetary transactions in property of a value greater than $10,000 which was derived from the specified unlawful activities of mail fraud and wire fraud, a violation of Title 18, United States Code, Section 1957.

B.   MANNER AND MEANS OF THE CONSPIRACY

52.   The object of the conspiracy was carried out, and to be carried out, in substance as follows:

a.   Proceeds obtained through mail fraud and wire fraud were deposited into defendant ALMUNTASSER HBAIU'S Performance Plus Marketing, Inc. bank account.

b.   Defendant ALMUNTASSER HBAIU caused wire transfers to be made from Performance Plus Marketing's bank account to defendant MICHAEL KANG'S Nutriplus Services, Inc.'s bank account to purchase additional products containing prescription drugs.

C.   OVERT ACTS

53.   In furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendants ALMUNTASSER HBAIU and MICHAEL KANG, together with others known and unknown to the

34

1  Grand Jury, committed and willfully caused others to commit the

2  following overt acts, among others, within the Central District

3  of California and elsewhere:

4      Overt Act No. 1:  On or about April 13, 2012, defendant

5  ALMUNTASSER HBAIU caused a wire transfer in the amount of

6  $100,000 to be made from Performance Plus Marketing, Inc. d/b/a

7  HK Nutraceuticals Bank of America account number XXXXX-X0685 to

8  defendant MICHAEL KANG D/B/A Nutriplus Services Inc. Bank of

9  America account number XXXXX-X9835.

10      Overt Act No. 2:  On or about April 27, 2012, defendant

11  ALMUNTASSER HBAIU caused a wire transfer in the amount of

12  $62,839 to be made from Performance Plus Market, Inc. d/b/a HK

13  Nutraceuticals Bank of America account XXXXX-X0685 to defendant

14  MICHAEL KANG d/b/a Nutriplus Services Inc. Bank of America

15  account number XXXXX-X9835.

16      Overt Act No. 3:   On or about May 16, 2012, defendant

17  ALMUNTASSER HBAIU caused a wire transfer in the amount of

18  $118,800 to be made from Performance Plus Marketing d/b/a HK

19  Nutraceuticals Bank of America account XXXXX-X0685 to defendant

20  MICHAEL KANG d/b/a Nutriplus Services Bank of America account

21  number XXXXX-X9835.

22      Overt Act No. 4:  On or about May 29, 2012, defendant

23  ALMUNTASSER HBAIU caused a wire transfer in the amount of

24  $105,691.50 to be made from Performance Plus Marketing d/b/a HK

25  Nutraceuticals Bank of America account XXXXX-X0685 to defendant

26  MICHAEL KANG d/b/a Nutriplus Services Bank of America account

27  number XXXXX-X9835.

28

1        Overt Act No. 5:  On or about June 5, 2012, defendant

2    ALMUNTASSER HBAIU caused a wire transfer in the amount of

3    $51,250 to be made from Performance Plus Marketing d/b/a HK

4    Nutraceuticals Bank of America account XXXXX-X0685 to defendant

5    MICHAEL KANG d/b/a Nutriplus Services Bank of America account

6    number XXXXX-X9835.

7        Overt Act No. 6:  On or about June 11, 2012, defendant

8    ALMUNTASSER HBAIU caused a wire transfer in the amount of

9    $50,000 to be made from Performance Plus Marketing d/b/a HK

10   Nutraceuticals Bank of America account XXXXX-X0685 to defendant

11   MICHAEL KANG d/b/a Nutriplus Services Bank of America account

12   number XXXXX-X9835.

13       Overt Act No. 7:  On or about June 14, 2012, defendant

14   ALMUNTASSER HBAIU caused a wire transfer in the amount of

15   $39,525 to be made from Performance Plus Marketing d/b/a HK

16   Nutraceuticals Bank of America account XXXXX-X0685 to defendant

17   MICHAEL KANG d/b/a Nutriplus Services Bank of America account

18   number XXXXX-X9835.

19       Overt Act No. 8:  On or about June 15, 2012, defendant

20   ALMUNTASSER HBAIU caused a wire transfer in the amount of

21   $75,000 to be made from Performance Plus Marketing d/b/a HK

22   Nutraceuticals Bank of America account XXXXX-X0685 to defendant

23   MICHAEL KANG d/b/a Nutriplus Services Bank of America account

24   number XXXXX-X9835.

25       Overt Act No. 9:  On or about July 3, 2012, defendant

26   ALMUNTASSER HBAIU caused a wire transfer in the amount of

27   $44,541.75 to be made from Performance Plus Marketing d/b/a HK

28   Nutraceuticals Bank of America account number XXXXX-X0685 to

1   defendant MICHAEL KANG d/b/a Nutriplus Services Bank of America

2   account XXXXX-X9835.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(1); 21 U.S.C. § 853(p)]

54.   Pursuant to Federal Rule of Criminal Procedure 32.2(a), notice is hereby given that upon conviction of the offense in violation of Title 18, United States Code, Section 1956 set forth in Count Three of this Indictment, or the offense in violation of Title 18, United States Code, section 1957 set forth in Count Twenty-Six of this Indictment, each defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), the following:

a.   All right, title and interest in any property, real or personal, involved in or traceable to such offense including but not limited to $20,000 U.S. currency seized from 5560 East 61st Street, Commerce, CA, on December 5, 2012; and

b.   A money judgment in the amount of $7,297,945.00.

55.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), each defendant so convicted shall forfeit substitute property, up to the total value of the property described in paragraph 54 if, by any act or omission of the defendant, the property described in paragraph 54 or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[31 U.S.C. § 5317(c); 21 U.S.C. § 853(p)]

56.   Pursuant to Federal Rule of Criminal Procedure 32.2(a), notice is hereby given that upon conviction of any of the offenses in violation of Title 31, United States Code, Section 5324 as set forth in Count Fifteen of this Indictment, or a conspiracy to commit such offense, as set forth in Count Two of this Indictment, each defendant so convicted shall forfeit to the United States of America, pursuant to Title 31, United States Code, Section 5317(c), the following:

a.   All right, title and interest in any and all property involved in the offense of conviction and all property traceable to such property, including but not limited to property located at 1806 Meadow Ridge Drive, Hummelstown, PA, owned by Almuntasser Hbaiu; and

b.   A money judgment in the amount of $454,830.

57.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(B), each defendant so convicted shall forfeit substitute property, up to the total value of the property described in paragraph 56 if, by any act or omission of the defendant, the property described in paragraph 56 or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 21 U.S.C.

§ 853(p)]

58.   Pursuant to Federal Rule of Criminal Procedure 32.2(a), notice is hereby given that upon conviction of any of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts Sixteen or Seventeen of this Indictment, each defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the following:

a.   All right, title and interest in any property, real or personal, which constitutes or is derived from proceeds obtained, directly or indirectly, as a result of such violation, or property traceable to such property including but not limited to the balance of Bank of America Account XXXX XXXX 0685, held by Performance Plus Marketing Inc., dba HK Nutraceuticals; the balance of Bank of America Account XXXXX 04542, held by Almuntasser Hbaiu and Abdul Razzak; and

b.   A money judgment in the amount of $7,297,945.00.

59.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, Section 2461(c), each defendant so convicted shall forfeit substitute property, up to the total value of the property described in paragraph 58 if, by any act or omission of the defendant, the property described in paragraph 58 or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond

40

1    the jurisdiction of the court; (d) has been substantially

2    diminished in value; or (e) has been commingled with other

3    property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 21 U.S.C.

§ 853(p)]

60.   Pursuant to Federal Rule of Criminal Procedure 32.2(a), notice is hereby given that upon conviction of any of the offenses in violation of Title 18, United States Code, Section 1341 set forth in Counts Eighteen through Twenty-Two of this Indictment, each defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the following:

a.    All right, title and interest in any property, real or personal, which constitutes or is derived from proceeds obtained, directly or indirectly, as a result of such violation, or property traceable to such property including but not limited to the balance of Bank of America Account XXXX XXXX 0685, held by Performance Plus Marketing Inc., dba HK Nutraceuticals; the balance of Bank of America Account XXXXX 05542, held by Almuntasser Hbaiu and Abdul Razzak Hbaiu; $20,000 U.S. currency seized from 5560 East 61st Street, Commerce, CA, on December 5, 2012; $58,392.65 U.S. currency seized from 1541 Powerline Road, Pompano, FL, on December 3, 2012; $5,743 U.S. currency seized from 1541 Powerline Road, Pompano, FL, on December 3, 2012; $11,356.71 U.S. currency seized from 1541 Powerline Road, Pompano, FL, on December 3, 2012; and

b.    A money judgment in the amount of $7,297,945.00.

61.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, Section 2461(c), each

1 │ defendant so convicted shall forfeit substitute property, up to

2 │ the total value of the property described in paragraph 60 if, by

3 │ any act or omission of the defendant, the property described in

4 │ paragraph 60 or any portion thereof, (a) cannot be located upon

5 │ the exercise of due diligence; (b) has been transferred or sold

6 │ to, or deposited with, a third party; (c) has been placed beyond

7 │ the jurisdiction of the court; (d) has been substantially

8 │ diminished in value; or (e) has been commingled with other

9 │ property that cannot be divided without difficulty.

A TRUE BILL

/S/
_____
Foreperson

STEPHANIE YONEKURA
Acting United States Attorney

Scott Garringer
Deputy Chief, Criminal Division For:

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

CHRISTY H. FAWCETT
Assistant United States Attorney
United States Attorney's Office
Middle District of Pennsylvania

43